Brian W. Brokate (BB 5830)
Jeffrey E. Dupler (JD 5430)
Adam W. Sgro (AS 4684)
Gibney, Anthony & Flaherty, LLP
665 Fifth Avenue
New York, New York 10022
Telephone: (212) 688-5151
Facsimile: (212) 688-8315

Marsha K. Hoover  (pro hac vice pending)
Robert D. Leighton (pro hac vice pending)
GOLDBERG KOHN, LTD.
55 East Monroe, Suite 3300
Chicago, Illinois 60603
312-201-4000

Attorneys for Plaintiffs Guinness World Records Limited
and Guinness World Records North America, Inc.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUINNESS WORLD RECORDS LIMITED, a United Kingdom Limited Company and GUINNESS WORLD RECORDS NORTH AMERICA, INC.,<br><br>               Plaintiffs,<br><br>   v.<br><br>SCHOLASTIC, INC.,<br><br>              Defendant. | Case No.<br><br>**Memorandum In Support Of Motion For An Order To Show Cause Why A Preliminary Injunction Should Not Issue** |

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................... 1

II.    STATEMENT OF FACTS ....................................................................................... 1

    A.    GWR's Valuable Intellectual Property ....................................................... 1

    B.    Scholastic's Wrongful Conduct .................................................................. 3

III.   ARGUMENT ........................................................................................................... 5

    A.    Legal Standard for Preliminary Injunction ................................................ 5

    B.    GWR Is Likely To Prevail On The Merits ................................................. 5

         1.    GWR is likely to prevail on its claims of trade dress
             infringement ...................................................................................... 5

              a)    Strength of the trade dress: ................................................... 7

              b)    Similarity between GWR's trade dress and the
                     Infringing Cover ................................................................... 8

              c)    The proximity of the products in the marketplace ............. 9

              d)    Bridging the gap. ............................................................... 10

              e)    Evidence of actual confusion ........................................... 10

              f)    Scholastic's bad faith. ....................................................... 10

              g)    The quality of Scholastic's book ...................................... 10

              h)    The sophistication of the purchasers ................................ 11

         2.    GWR is likely to prevail on its claim of copyright
              infringement .................................................................................... 12

         3.    GWR is likely to prevail on its claim under the New York
              Anti-Dilution Statute (NY Gen. Bus. Law 360) ...................... 13

    C.    Scholastic's Actions Threaten Irreparable Injury And Leaves GWR
         With No Adequate Remedy At Law ........................................................ 14

    D.    The Harm to GWR outweighs any hypothetical injury to Scholastic .................. 16

    E.    The Public Interest will not be disserved by the issuance of an
         injunction ............................................................................................... 17

IV.   CONCLUSION ..................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Adelphia Supply USA,*
No. 15CV5826CBAMDG, 2015 WL 10906060 (E.D.N.Y. Nov. 6, 2015) ............................20

*Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co.,*
No. 15-CV-1092 JMF, 2015 WL 845711 (S.D.N.Y. Feb. 26, 2015) ....................................16

*Benihana, Inc. v. Benihana of Tokyo, LLC,*
784 F.3d 887 (2d Cir. 2015) ................................................................................................17

*Bulman v. 2BKCo, Inc.,*
882 F. Supp. 2d 551 (S.D.N.Y. 2012) .....................................................................................5

*Coty Inc. v. Excell Brands, LLC,*
No. 15-CV-7029 (JMF), 2017 WL 4155402 (S.D.N.Y. Sept. 18, 2017) ..............................18

*Diesel S.P.A. v. Does,*
No. 14-CV-4592 (KMW), 2016 WL 96171 (S.D.N.Y. Jan. 8, 2016) ....................................19

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340 (1991) ............................................................................................................12

*Fibermark, Inc. v. Brownville Specialty Paper Prod., Inc.,*
419 F. Supp. 2d 225 (N.D.N.Y. 2005) ..................................................................................15

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,*
111 F.3d 993 (2d Cir. 1997) ..................................................................................................8

*Halo Optical Prod., Inc. v. Liberty Sport, Inc.,*
No. 614CV00282MADTWD, 2017 WL 1082443 (N.D.N.Y. Mar. 22, 2017) ................18, 20

*Hamil Am. Inc. v. GFI,*
193 F.3d 92 (2d Cir. 1999) ..................................................................................................13

*Helene Curtis Industries, Inc. v. Church & Dwight Co.,*
560 F.2d 1325 (7th Cir. 1977) .............................................................................................19

*It's a New 10, LLC v. Harmon Stores, Inc.,* No. 17-CV-4231 (JPO), 2017 WL 3208611
(S.D.N.Y. July 28, 2017) ..................................................................................................6, 10

*Kregos v. Associated Press,*
3 F.3d 656 (2d Cir. 1993) ....................................................................................................13

*L.A. T-Shirt & Print, Inc. v. Rue 21, Inc.,*
No. 16-CV-5400 (RA), 2017 WL 3575699 (S.D.N.Y. Aug. 17, 2017) .................................13

*Mamiya Am. Corp. v. HuaYi Bros., Inc.,*
No. 09-CV-5501 ENV JO, 2011 WL 1322383 (E.D.N.Y. Mar. 11, 2011)............................17

*Marks Org., Inc. v. Joles,*
784 F. Supp. 2d 322 (S.D.N.Y. 2011) ..............................................................................15, 16

*Merriam–Webster, Inc. v. Random House, Inc.*,
  35 F.3d 65 (2d Cir.1994) ...................................................................................................15

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
  704 F. Supp. 2d 305 (S.D.N.Y. 2010) ..............................................................................20

*North Face Apparel Corp. v. Moler*,
  No. 12 CIV. 6688 JGK GWG, 2015 WL 4385626 (S.D.N.Y. July 16, 2015) ........................17

*Paddington Corp. v. Attiki Importers & Distributors, Inc.*,
  996 F.2d 577 (2d Cir. 1993) ........................................................................................5, 6, 7

*Patsy's Italian Rest., Inc. v. Banas*,
  575 F. Supp. 2d 427 (E.D.N.Y. 2008) ................................................................................15

*Pfizer, Inc. v. Perrigo Co.*,
  988 F. Supp. 686 (S.D.N.Y. 1997) ..........................................................................10, 11, 12

*Polaroid Corp. v. Polarad Electronics, Corp.*,
  287 F.2d 492 (2d Cir. 1961) .............................................................................7, 8, 10, 12

*Salinger v. Colting*,
  607 F.3d 68 (2d Cir. 2010) .........................................................................................15, 16

*Tecnimed SRL v. Kidz-Med, Inc.*,
  763 F. Supp. 2d 395 (S.D.N.Y. 2011) ..................................................................................6

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
  800 F. Supp. 2d 515 (S.D.N.Y. 2011) ................................................................................20

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir. 1996) ...............................................................................................12

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................................................5

*Wolstenholme v. HIRST*,
  No. 16 CIV. 4385 (JGK), 2017 WL 4277691 (S.D.N.Y. Sept. 25, 2017)..............................12

**Statutes**

N.Y. Gen. Bus. Law Section 360-l ..........................................................................................13

## I.    INTRODUCTION

Plaintiffs Guinness World Records Limited and Guinness World Records North America, Inc. (collectively "GWR") respectfully submits this Memorandum of Law in support of its motion for an order to show cause why a preliminary injunction should not issue against Scholastic, Inc. ("Scholastic" or "Defendant"). This memorandum should be read in conjunction with the accompanying declaration of Peter Harper ("Harper Decl.") and the Complaint.

## II.   STATEMENT OF FACTS

### A.    GWR's Valuable Intellectual Property

GWR is recognized the world over as the authority on record-breaking achievements.  Its reputation is built on its annual publication of *Guinness World Records*, a book that compiles information about the records GWR verifies and maintains in a proprietary database of record information. The first edition of its book, then entitled *The Guinness Book of Records*, was published in England in 1955, and in the United States in 1956 as the *Guinness Book of Superlatives* and later as the *Guinness Book of World Records*.  Since publishing the first edition, GWR has sold over 138 million copies of its books in over 100 countries,  rendering Guinness World Records itself the holder of a world record as the owner of the bestselling copyright book of all time.  The *Guinness World Record* book is GWR's core product and is responsible for a the majority of GWR's revenues.

Each year, the cover of *Guinness World Records* features distinctive, non-functional elements that serve to identify GWR as the author and source of the book and an indicator of the high quality associated with the Guinness World Records brand.  Although the cover is different each year, GWR uses a consistent cover design theme from one edition to the next to ensure consumer recognition.  Photographs of the last ten years of GWR's annual book are reproduced in paragraph 13 of the Complaint.  The common elements in the design of the Guinness World

Records annual book covers used for at least the last ten editions of the book include (1) the registered GUINNESS WORLD RECORDS trademark and the year of the edition; (2) the book title written in large, block style font that occupies at least one-third of the surface of the front cover; (3) the title written in silver metallic letters outlined in black with a three –dimensional effect; (4) the background design of the cover consisting of a graphic that conveys a sense of expansion from the title outwards; and for the last four editions (5) a "call-out" promotional message is printed on a small circular background in the lower right-hand corner of the cover.

The 2018 version of the Guinness World Records book features the following cover:



The trade dress featured on this book includes at least the following elements: a text block that is distinctive in its size, placement, and prominence; a layout that includes a distinctive text style, shadowing and execution of a 3D extruded font; four lines of text, with the words "world" and "records" appearing on lines two and three and the year "2018" appearing directly underneath on the fourth line; the concept of a starburst background and the execution of

that background in the color blue; and the placement of the ball-shaped 'call-out' in the bottom right hand corner.  This overall design, including the prominence of the blue, white, and red colors, constitutes protectable trade dress.  The cover of the *Guinness World Records 2018* book is hereafter referred to as the "Work."

In addition, the book as a whole, including its constituent components, is an original work of authorship in which GWR has copyrights.  GWR has registered its copyrights in this work with the U.S. Copyright Office, no. TX 8-410-779.

### B.    Scholastic's Wrongful Conduct

GWR and Defendant Scholastic have been parties to a business relationship for a number of years, in that GWR has in the past licensed its content to Scholastic, and Scholastic has sold *Guinness World Records* books through Scholastic Book Fairs and the Scholastic Book Club.  However, in a deliberate attempt to profit from the fame and success of the *Guinness World Records* books, Scholastic has begun promoting and intends to publish a "Book of World Records 2018" the cover of which  is nearly identical to the cover of the Work.  The two book covers are depicted side by side below:




The cover of Scholastic's "Book of World Records 2018" is hereafter referred to as the "Infringing Cover."

On or around August 15, 2017, GWR first became aware that Scholastic intends to publish in late October its 2018 book with the Infringing Cover. On September 6, 2017, GWR wrote to Scholastic, pointing out the extreme similarity between the covers and noting that the Infringing Cover unfairly attempts to take advantage of GWR's goodwill, trade dress, copyrights, and other intellectual property. Compl., Ex. 1. On September 14, 2017, in response to GWR's letter, Scholastic stated that it had modified the Infringing Cover and that Scholastic had "not distributed, and will not distribute, and Scholastic Books with the prior cover." Compl., Ex. 2. The next day, in order to settle the conflict between the parties, GWR accepted Scholastic's proposed cover change. Compl., Ex. 3. However, on September 20, 2017, Scholastic repudiated its promise to change the cover, stating that "Scholastic has decided not to make any changes to its cover at this time." Compl., Ex. 4. As a result, GWR was forced to

bring this lawsuit to protect its valuable intellectual property rights and enjoin Scholastic from distributing its harmful, infringing "Book of World Records 2018."

## III.    ARGUMENT

Due to the irreparable harm that GWR will suffer if Scholastic is permitted to sell and distribute its infringing book, it is appropriate for a preliminary injunction to be issued in this case.

### A.    Legal Standard for Preliminary Injunction

A plaintiff is entitled to a preliminary injunction if it can demonstrate a likelihood that it will succeed on the merits at the trial of the action and: (1) it is likely to suffer irreparable injury if an injunction is not granted; (2) it has no adequate remedy at law to compensate for its injury; (3) that the balance of hardships weighs in its favor; and (4) that the public interest will not be disserved by the issuance of an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Bulman v. 2BKCo, Inc.*, 882 F. Supp. 2d 551, 557 (S.D.N.Y. 2012).  In this case, the criteria for preliminary injunction are easily satisfied.

### B.    GWR Is Likely To Prevail On The Merits

GWR is likely to prevail on the merits of both its trade dress infringement and copyright infringement claims.

#### 1.    GWR is likely to prevail on its claims of trade dress infringement

"A product's trade dress is its total image including features such as size, shape, color or color combinations, texture, or graphics." *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 582 (2d Cir. 1993) (internal quotation omitted).  "To prevail on the merits in a trade-dress infringement case under the Lanham Act, plaintiff must first demonstrate that its trade dress is *either* inherently distinctive *or* that it has acquired distinctiveness through a secondary meaning." *It's a New 10, LLC v. Harmon Stores, Inc.*, No. 17-CV-4231 (JPO), 2017

WL 3208611, at *2 (S.D.N.Y. July 28, 2017). "Second, plaintiff must demonstrate that there is a likelihood of confusion between defendant's trade dress and plaintiff's." *Id.*

In this case, the cover is in essence the "packaging" of GWR's product. And "since the choices that a producer has for packaging its products are almost unlimited, typically a trade dress will be arbitrary or fanciful and thus inherently distinctive, and the only real question for the courts will be whether there is a likelihood of confusion between the products." *TecnimedSRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 405 (S.D.N.Y. 2011) (internal quotation omitted). Thus, GWR is not required to demonstrate the existence of secondary meaning. *See Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 582 (2d Cir. 1993) ("Prior to the Supreme Court's decision in *Two Pesos,* the Second Circuit required a plaintiff seeking § 43(a) protection of a trade dress to establish distinctiveness by proving secondary meaning. . . .In *Two Pesos,* the Supreme Court specifically rejected the Second Circuit approach . . . .").

The trade dress appearing on the cover of GWR's *Guinness World Records 2018* book is non-functional and inherently distinctive. In particular, the cover is a work of art comprised of a compilation of a distinctive elements, including a text block of a particular size, placement, and prominence; a distinctive text style, including shadowing and a 3D extruded font; four lines of text, with the words "world" and "records" appearing on lines two and three and the year "2018" appearing directly underneath on the fourth line; a blue starburst background; and the placement of the ball-shaped 'call-out' in the bottom right hand corner. This overall design, including the prominence of blue, white, and red colors, is inherently distinctive. Indeed, "[w]hile each of these elements individually would not be inherently distinctive, it is the combination of elements and the total impression that the dress gives to the observer that should be the focus of a court's

analysis of distinctiveness." *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 584 (2d Cir. 1993).

The Infringing Cover creates a likelihood of confusion with GWR's Work.  In deciding whether a given trade dress creates a likelihood of confusion, courts in the Second Circuit look to the eight factors articulated in *Polaroid Corp. v. Polarad Electronics, Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  *Paddington*, 996 F.2d at 584.  The non-exclusive *Polaroid* factors are: (1) the strength of the plaintiff's trade dress, (2) the similarity between the two trade dresses, (3) the proximity of the products in the marketplace, (4) the likelihood that the prior owner will bridge the gap between the products, (5) evidence of actual confusion, (6) the defendant's bad faith, (7) the quality of the defendant's product, and (8) the sophistication of the relevant consumer group. *Id.*

Ultimately, the likelihood of confusion inquiry asks whether two products "create the same general overall impression such that a consumer who has seen the [the plaintiff's] trade dress would, upon later seeing the [defendant's product] in its trade dress alone, be confused." *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1004 (2d Cir. 1997).

A likelihood of confusion is inevitable where, as here, the Defendant is using virtually identical trade dress for identical goods, namely, books concerning the subject of world records. Each of the *Polaroid* factors weighs in favor of finding a likelihood of confusion.

### a)   *Strength of the trade dress:*

GWR's trade dress is strong because it is an entirely original work of distinctive elements arranged in a creative and arbitrary way.  Indeed, GWR is unaware of *any* other book, aside from the covers of its own prior editions of *Guinness World Records*, which are comprised of several of the elements, that has utilized the particular combination of elements depicted on the cover of *Guinness World Records 2018*.  In particular, GWR's strong trade dress is based on its unique

text block appearing on four lines in a 3D extruded white font with the words "world" and "records" appearing on lines two and three and the year "2018" appearing directly underneath on the fourth line; combined with a blue starburst background and a ball shaped 'call-out' in the bottom right corner.  This overall design creates a commercial impression that consumers strongly associate with GWR and its *Guinness World Records 2018* book.  The strength of GWR's trade dress is bolstered by the significant promotional and advertising efforts of GWR undertaken prior to the launch of this edition of *Guinness World Records*.  Harper Decl. at ¶¶19-20.  In particular, GWR has spent in excess of $400,000 promoting the *Guinness World Records 2018* book including in stores, on television, online, and via social media.  Harper Decl. at ¶20.  The cover of the book, bearing GWR's trade dress is featured prominently in these promotional efforts.  Harper Decl. at ¶19, Ex. A.

> b)      ***Similarity between GWR's trade dress and the Infringing Cover***

The similarity between GWR's trade dress and the Infringing Cover is striking.  Specifically, the Infringing Cover utilizes the same four-line text block in a 3D extruded white font with the words "world" and "records" appearing on lines two and three and the year "2018" appearing directly underneath on the fourth line; it features a blue starburst background and a ball shaped 'call-out' in the bottom right corner.  Apart from substituting the words "Book Of" for "Guinness" on line one of the text block, the Infringing Cover incorporates nearly all creative elements of GWR's Work.  When viewed side-by-side, the similarity is obvious:

8

 

*c)* ***The proximity of the products in the marketplace.***

The Scholastic book and GWR's book compete head-to-head in identical trade channels. Harper Decl. at ¶11. Both books will be sold through traditional "Trade" channels such as Amazon, Barnes & Noble, and other retailers, as well as through "Special" channels such as school book fairs and book clubs. *See id.* Both books will be located in the same section of any seller and, because of the very similar subject matter, will likely be located very near—or even next to one another. *Id.* Additionally, the market for both parties' books is the youth market. Harper Decl. at ¶¶11, 21. In short, the two books will compete directly with one another for the same purchasers at the same stores and book fairs. In such a situation, the design of the Scholastic book cover will make it very difficult for relevant purchasers to distinguish between its knockoff book and *Guinness World Records 2018*. Confusion is inevitable.

### d)        Bridging the gap.

"This factor considers the likelihood that plaintiff will enter into the defendant's market—it protects the plaintiff's interest in being able to enter a related field at some future time." *It's a New 10*, 2017 WL 3208611, at *4.  Where, as here, the plaintiff and defendant already compete in the same market, this factor favors plaintiff.  *See id.* ("Since the New 10 product and the Harmon product already compete in the same market, this factor favors New 10.") (citing *Pfizer, Inc. v. Perrigo Co.*, 988 F. Supp. 686, 699 (S.D.N.Y. 1997)).

### e)        Evidence of actual confusion.

Scholastic's book has not yet been released to the market, and GWR does not have access to information about its pre-sales.  At this time, therefore, this factor is neutral.

### f)        Scholastic's bad faith.

Scholastic appears to have adopted GWR's trade dress in a bad faith attempt to trade on the famous brand and good will associated with Guinness World Records.  In particular, Scholastic had the opportunity to design its cover after receiving a mock-up of the *Guinness World Records 2018* cover.  Given the extreme similarities, it would strain credulity to argue that Scholastic's cover was designed independently and the parallels between them are mere coincidence.  Scholastic had no right to use or copy GWR's cover and Scholastic could not have any good faith belief that it possessed such a right.  As a result, it is likely that Scholastic's action were taken in bad faith and discovery in this litigation is likely to reveal additional confirmation of this fact.

### g)        The quality of Scholastic's book

GWR's *Guinness World Records 2018* book, like all of GWR's books, is of high quality. Harper Decl. at ¶17-18.  The book is distributed primarily in hard cover and the cover features metallic polyethylene terephthalate foil with micro-engraved features, holographic elements,

Fresnel lenses and four-color inks, laminated onto 130gsm paper and based on an original design to form a unique, bespoke product. *Id.* at ¶18. This is not a standard material utilized by publishers and is rarely used due to the cost and complexity. *Id.* The content of the book itself is known throughout the world as high quality. *Id.* at ¶7. Indeed, the *Guinness World Records* book is considered by many to be *the* definitive source for information on a wide variety of records. *Id.* The quality of the Scholastic's 2018 book is unknown at this time, but based on prior editions of its "book of world records," it will contain information about records that is commonly available and not subject to the same judging and vetting as GWR's records. *See* Harper Decl. at ¶26. Moreover, Scholastic's book is sold at a much lower price point than GWR's, with the suggested retail price of Scholastic's book at $12.99 and the *Guinness World Records 2018* book at $28.95. *Id.*

### h)       *The sophistication of the purchasers*

Finally, the sophistication of the relevant consumer group favors a finding that confusion is likely. The target demographic for *Guinness World Records* books are children and older youth, and the books are often sold at school book fairs and through book clubs. Harper Decl. at ¶21. These are unsophisticated buyers and are unlikely to apply great scrutiny to which "book of records" they are purchasing, or asking an adult to purchase for them, when viewing nearly identical book covers. *Id.* Moreover, because the purchase of a book is often not a major decision or one with significant financial consequences, even adult consumers may not examine the two books carefully, beyond the covers, to determine if they are purchasing an authentic *Guinness World Records* book.

Thus, not a single *Polaroid* factors favors Scholastic. Each of the factors either heavily favors GWR, or is neutral due to the early stage of this proceeding. GWR is likely to succeed on the merits of its trade dress infringement claim.

2.      **GWR is likely to prevail on its claim of copyright infringement**

To establish copyright infringement, two elements must be proven: (1) ownership of a

valid copyright, and (2) copying of constituent elements of the work that are original. *Feist*

*Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Wolstenholme v. HIRST*,

No. 16 CIV. 4385 (JGK), 2017 WL 4277691, *2 (S.D.N.Y. Sept. 25, 2017) (citing *Williams v.*

*Crichton*, 84 F.3d 581, 587 (2d Cir. 1996)).   In this case, GWR owns a valid copyright in the

Work.  GWR's "certificate of registration from the United States Register of Copyrights

constitutes prima facie evidence of the valid ownership of a copyright." *Hamil Am. Inc. v. GFI*,

193 F.3d 92, 98 (2d Cir. 1999).  GWR's certificate of registration is attached to the Complaint as

Ex. 5.

Furthermore, GWR is likely to succeed in establishing that Scholastic copied the

constituent elements of the Work.  "Since direct evidence of copying is rarely possible, copying

is generally established by showing (a) that the defendant had access to the copyrighted work

and (b) the substantial similarity of protectible [*sic*] material in the two works." *L.A. T-Shirt &*

*Print, Inc. v. Rue 21, Inc.*, No. 16-CV-5400 (RA), 2017 WL 3575699, at *3 (S.D.N.Y. Aug. 17,

2017) (quoting *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993)).

As explained in the Harper Declaration, GWR presented Scholastic with a mockup of the

cover of its *Guinness World Records 2018* book cover in March, 2017.  Harper Decl. at ¶¶22-24.

There were only insubstantial differences, if any, between this mockup and the final GWR cover.

Harper Decl. at ¶24.  Thus, Scholastic had access to the Work prior to the time when its cover

design would have been finalized.

The substantial similarity between the Work and the Infringing Cover is obvious.  Among

the protectable elements of the Work are the author's combination of several distinctive

components in an artistic way.  This combination includes displaying the title of the book in a

12

text block with particular size, placement, and prominence; a distinctive text style, including shadowing and use of a 3D extruded font; four lines of text, with the words "world" and "records" appearing on lines two and three and the year "2018" appearing directly underneath on the fourth line; a blue starburst background design; and the inclusion and placement of the ball-shaped 'call-out' in the bottom right hand corner.

Scholastic has copied *all* of these elements nearly identically. Indeed, Scholastic's Infringing Cover includes a strikingly similar text block in similar size, placement, and prominence, with similar shadowing and in a 3D extruded font. Scholastic's Infringing Cover also uses the same four-line format, with the words "world" and "records" appearing on lines two and three and the year "2018" appearing underneath on the fourth line. Scholastic's Infringing Cover likewise features a blue starburst background and a ball-shaped 'call-out' in the bottom right hand corner. Given these similarities, it is clear that Scholastic's cover was not designed independently without copying GWR's Work. The Work and the Infringing Cover are substantially similar in nearly all respects, including the presence of many discrete, protectable elements of the Work and the overall artistic combination of these elements.

### 3.     GWR is likely to prevail on its claim under the New York Anti-Dilution Statute (NY Gen. Bus. Law 360)

N.Y. Gen. Bus. Law Section 360-l states:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

("NY Anti-Dilution Statute"). "To prevail on the anti-dilution claim under New York General Business Law § 360–*l*, Plaintiff must prove, first, that its trade dress is of truly distinctive quality or has acquired secondary meaning, and, second, that there is 'likelihood of dilution.'"

*Fibermark, Inc. v. Brownville Specialty Paper Prod., Inc.*, 419 F. Supp. 2d 225, 232 (N.D.N.Y.

2005) (quoting *Merriam–Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 73 (2dCir.1994)).

Thus, the NY Anti-Dilutions Statute protects GWR's valuable trade dress from Scholastic's

conduct which dilutes GWR's trade dress by blurring the distinctive quality of GWR's trade

dress and impairs the ability of the GWR trade dress to identify GWR as the source of its book.

Dilution under the NY Anti-Dilution Statute "may occur through either 'tarnishment' or

'blurring,' and liability does not depend upon proof of either a likelihood of confusion or even

competition between the parties." *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 455

(E.D.N.Y. 2008).  Here, Scholastic's use of nearly identical trade dress for a different "book of

records" dilutes the capacity of GWR's trade dress to serve as a source identifier for GWR's

book.

   C.    **Scholastic's Actions Threaten Irreparable Injury And Leaves GWR With No
          Adequate Remedy At Law**

   Prior to *Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010), "courts in this circuit tended to

presume irreparable injury in trademark cases where a likelihood of confusion was shown."

*Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 334 (S.D.N.Y. 2011).  Although this presumption

no longer applies, it remains the case that "a particularly strong likelihood of confusion should

weigh in favor of finding irreparable injury." *Id.*  Indeed, following *Salinger*, "[c]ourts have

consistently found irreparable harm to exist in situations where there is a likelihood of confusion

between the marks, and where the reputation and goodwill cultivated by the party seeking the

injunction would be out of the party's control because of the infringement." *Barefoot Contessa

Pantry, LLC v. Aqua Star (USA) Co.*, No. 15-CV-1092 JMF, 2015 WL 845711, at *7 (S.D.N.Y.

Feb. 26, 2015) (internal quotation omitted).

14

Here, GWR has labored to build goodwill in its world records business for over sixty years, and its *Guinness World Records* series of books is the hallmark of its business. If Scholastic is permitted to enter the market with its knockoff book cover, GWR will be irreparably harmed. As demonstrated above, the facts of this case establish a substantial likelihood of confusion between the Work and Scholastic's Infringing Cover. It is rare for consumer confusion not to result in irreparable harm—and this case is no exception.

The annual edition of the *Guinness World Records* book is the core product of GWR, accounting for more than half of its yearly revenues. Harper Decl. at ¶12. The *Guinness World Records 2018* book was released on August 29, 2017. However, GWR typically sells over 75% of its *Guinness World Records* books each year in the months of November and December. Harper Decl. at ¶10. Absent Court intervention, Scholastic's infringing book will be published on October 31, 2017. This means that Scholastic's imitation will be competing directly and likely appearing next to GWR's book on shelves during the most critical sales months of the year. *Id.* at ¶11. It is impossible to quantify the loss of goodwill and damage to GWR's brand that will result from consumers mistakenly believing they are purchasing the *Guinness World Records* book when, in fact, they have purchased Scholastic's imitation. Moreover, GWR will suffer irreparable damage based on the impairment of the ability of GWR's trade dress to identify GWR as the source of GWR's products. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 896 (2d Cir. 2015) ("The district court also properly concluded that if the unauthorized sales continue, [plaintiff] would suffer substantial harm to its reputation that is not calculable nor precisely compensable."). In sum, if Scholastic is permitted to use GWR's trade dress and copyrighted material, GWR's reputation and business will be adversely affected in ways that are difficult to quantify and impossible to adequately redress with money damages alone.

*See Mamiya Am. Corp. v. HuaYi Bros., Inc.*, No. 09-CV-5501 ENV JO, 2011 WL 1322383, at *9

(E.D.N.Y. Mar. 11, 2011) ("If HuaYi is allowed to continue to use the Profoto Marks, it may

adversely affect Mamiya's reputation and business in ways that may be difficult to quantify and

that will not lend themselves easily to monetary compensation.").

### D.    The Harm to GWR outweighs any hypothetical injury to Scholastic

"As to the balance of hardships, it is axiomatic that an infringer cannot complain about

the loss of ability to offer its infringing product." *North Face Apparel Corp. v. Moler*, No. 12

CIV. 6688 JGK GWG, 2015 WL 4385626, at *9 (S.D.N.Y. July 16, 2015) (internal quotation

omitted). Thus, courts frequently find that the balance of hardships favors a trademark owner

where the only loss that could be suffered by a defendant is the ability to sell an infringing

product. *See, e.g., Halo Optical Prod., Inc. v. Liberty Sport, Inc.*, No. 614CV00282MADTWD,

2017 WL 1082443, at *11 (N.D.N.Y. Mar. 22, 2017) ("the balance of hardships tips in Halo's

favor, as the only hardship Liberty will suffer as a result of an injunction is losing the ability to

use Halo's REC SPECS mark without Halo's permission.").

In addition, courts take into account expenditures by a plaintiff to market and sell its

product in balancing potential hardships. *See, e.g., Coty Inc. v. Excell Brands, LLC*, No. 15-CV-

7029 (JMF), 2017 WL 4155402, at *23 (S.D.N.Y. Sept. 18, 2017) ("The equities also weigh in

Coty's favor because it has spent millions of dollars marketing and selling its many iconic

fragrances for decades while Excell has conducted no marketing, has no brand recognition, and

only entered the fragrance market in 2010.").

In this case, the only potential damage to Scholastic is an inability to sell an infringing

product that represents a diminutive part of Scholastic's product offerings and revenues.[1]

---

[1] According to Nielsen data, Scholastic sold approximately 16,000 of the 2016 version of its
book in traditional channels of trade.  Ex. 1 (Nielsen Bookscan Data for Scholastic's book).

However, the harm to GWR in the absence of an injunction will be loss of sales and potentially enormous damage to GWR's ***core product line and brand***. Harper Decl. at ¶12. Moreover, Scholastic's Book of World Records is a relatively new product for Scholastic whereas GWR has published its book for over six decades. GWR has invested significant money and other resources promoting and marketing its *Guinness World Records* book, including the 2018 addition. Harper Decl. at ¶¶16, 19-20. Indeed, GWR has spent in excess of $400,000 promoting *Guinness World Records 2018* though television events, sweepstakes, online advertisements, and via social media. Harper Decl. at ¶¶19-20, Ex. A. A compilation of recent promotional efforts is attached to the Harper Declaration as Exhibit A.

Scholastic should not be heard to complain about any harm associated with pulling its infringing book from circulation given that Scholastic chose to copy GWR's intellectual property after receiving a mockup of GWR's book and chose to proceed with distribution even after GWR pointed out the infringement and demanded Scholastic modify its book prior to distribution. Having proceeded in this fashion, Scholastic cannot now claim that having to mend its ways will be too expensive. *See Helene Curtis Industries, Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1333-34 (7th Cir. 1977) ("Curtis deliberately proceeded with the marketing and promotion of its deodorant under the Arm in Arm trademark in spite of warnings that the mark was infringing and in spite of an injunctive order and agreement to the contrary. In doing so, it proceeded at its own risk and cannot now be heard to complain that it will be severely injured if the preliminary injunction is upheld.").

### E. The Public Interest will not be disserved by the issuance of an injunction

"[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *Diesel S.P.A. v. Does*, No. 14-CV-4592 (KMW), 2016 WL 96171, at *10 (S.D.N.Y. Jan. 8, 2016)) (quoting

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010)). *See also Halo Optical Prod., Inc. v. Liberty Sport, Inc.*, No. 614CV00282MADTWD, 2017 WL 1082443, at *11 (N.D.N.Y. Mar. 22, 2017) ("[T]he public has an interest in being free from confusion and deception. 'Because of the likelihood of consumer confusion in this case, the public interest would be served by the issuance of an injunction, and this factor weighs in Plaintiff's favor.'") (quoting *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011)); *Abbott Labs. v. Adelphia Supply USA*, No. 15CV5826CBAMDG, 2015 WL 10906060, at *12 (E.D.N.Y. Nov. 6, 2015) ("Enjoining the sale of a product likely to confuse users serves the public."). Therefore, due to the likelihood of confusion in this matter, the public interest will be served by granting GWR's request for a preliminary injunction. *Id.*

## IV.  CONCLUSION

For the foregoing reasons, the Court should grant GWR's Motion For An Order To Show Cause Why A Preliminary Injunction Should Not Issue.

Date:  October 6, 2017

Respectfully submitted,

Guinness World Records Limited and Guinness World
Records North America

By:_____

Brian W. Brokate (BB 5830)
Jeffrey E. Dupler (JD 5430)
Adam W. Sgro (AS 4684)
Gibney, Anthony & Flaherty, LLP
665 Fifth Avenue
New York, New York 10022
Telephone: (212) 688-5151
Facsimile: (212) 688-8315

Marsha K. Hoover
Robert D. Leighton
GOLDBERG KOHN, LTD.
55 East Monroe, Suite 3300
Chicago, Illinois 60603
312-201-4000
Marsha.Hoover@goldbergkohn.com
Robert.Leighton@goldbergkohn.com